UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
JULIAN CEBAN,                                                       :     17-CV-4554 (ARR) (CLP)
                                                                    :
                Plaintiff,                                          :
                                                                    :     OPINION & ORDER
        -against-                                                   :
                                                                    :
CAPITAL MANAGEMENT SERVICES, L.P.,                                  :
                                                                    :
                Defendant.                                          :
------------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiff Julian Ceban brings this action against defendant Capital Management Services, L.P. ("CMS"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Specifically, plaintiff claims that the statement, "[t]his settlement may have tax consequences" in the debt collection letter that he received was deceptive and misleading and constituted an unfair debt collection practice. Defendant has moved to dismiss plaintiff's complaint for lack of standing and failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. Although I conclude that plaintiff has standing, I dismiss plaintiff's complaint for the reasons explained below.

## BACKGROUND

Plaintiff is a consumer who allegedly incurred a personal debt to Barclays Bank Delaware for $1,999.87. Compl. ¶ 9, ECF No. 1; *see* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") Ex. A, ECF No. 13-8. On or around August 6, 2016, plaintiff received a collection letter from CMS, a debt collector, concerning his outstanding debt. *See* Compl. ¶ 10. The letter stated, in relevant part, that CMS was "authorized to accept less than the full balance due as settlement on the above-mentioned account" and invited plaintiff to "[p]lease contact [CMS's] representatives to discuss

a potential settlement . . . ." Pl.'s Opp'n Ex. A. The letter concluded as follows: "This settlement may have tax consequences. If you are uncertain of the tax consequences, consult a tax advisor." Pl.'s Opp'n Ex. A; Compl. ¶ 11.

Plaintiff initiated this action on August 2, 2017, alleging that the inclusion of the tax consequences language in the collection letter rendered the letter false, deceptive, and misleading in violation of 15 U.S.C. § 1692e and its subsections. *See* Compl. ¶ 19. Plaintiff also alleged violations of 15 U.S.C. § 1692d, which prohibits harassing conduct in connection with collecting a debt, and 15 U.S.C. § 1692f, which prohibits the use of unfair or unconscionable means to collect a debt. *Id.* Specifically, plaintiff claims that the tax statement "implies that every settlement has tax implications" and "misleads the consumer as to the impact of attempting to settle the matter for less than what the Defendant claims is owed." *Id.* ¶¶ 12, 14. Plaintiff further argues that the letter "fails to disclose to consumers that there is a distinction between forgiveness of principal and interest in regards to IRS reporting requirements." *Id.* ¶ 15. Because of these alleged violations, plaintiff says that he has been damaged and is entitled to relief under 15 U.S.C. § 1692k. *Id.* ¶¶ 17, 20.

Defendant now moves to dismiss plaintiff's complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

## STANDARDS OF REVIEW

### I. Federal Rule of Civil Procedure 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when a federal court lacks jurisdiction over the subject matter of a claim. Fed. R. Civ. P. 12(b)(1). An objection to a plaintiff's standing "is properly made on a Rule 12(b)(1) motion." *Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 297 (E.D.N.Y. 2016) (quoting *Tasini v. N.Y. Times Co., Inc.*, 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002)), *aff'd*, No. 17-140-CV, 2017 WL 4005008 (2d Cir. Sept. 12, 2017); *see also City of New York v. Milhelm*

2

*Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 340 (E.D.N.Y. 2008) ("As standing is 'a limitation on the authority of a federal court to exercise jurisdiction,' it is properly addressed within the context of a Rule 12(b)(1) motion." (quoting *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006))). To survive a motion to dismiss under 12(b)(1), a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). The plaintiff bears the burden of doing so by a preponderance of the evidence. *See Zirogiannis*, 221 F. Supp. 3d at 298. In deciding a Rule 12(b)(1) motion, the court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004).

## II. Federal Rule of Civil Procedure 12(b)(6) Standard

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a claim to relief. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under 12(b)(6), a complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Cty. of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must construe a complaint liberally, "accepting all factual allegations . . . as true, and drawing all reasonable inferences in the plaintiff's favor." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*

## DISCUSSION

### I. The FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Among other provisions of the statute, the FDCPA broadly provides that a debt collector may not "engage in any [harassing] conduct . . . in connection with the collection of a debt," *id.* § 1692d, "use any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id.* § 1692e, or "use unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f.

The Second Circuit has set forth two principles that guide interpretation of the FDCPA. First, "[b]ecause the FDCPA is remedial in nature," courts must construe its terms "in liberal fashion if the underlying Congressional purpose is to be effectuated." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017) (quoting *Vincent v. Money Store*, 736 F.3d 88, 98 (2d Cir. 2013)). Second, courts must evaluate debt collection practices from the perspective of the "least sophisticated consumer." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). This hypothetical consumer is a "naïve" and "credulous" person. *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015) (quoting *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005)). She does not have "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer." *Avila*, 817 F.3d at 75 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)). However, she is "neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (citing *Russell*, 74 F.3d at 34); *see also Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) ("The unsophisticated consumer isn't a dimwit. She may be uninformed, naïve, [and] trusting, . . . but she

has rudimentary knowledge about the financial world, and is capable of making basic logical deductions and inferences" (internal quotation marks omitted)). Indeed, the Second Circuit "has been careful not to conflate lack of sophistication with unreasonableness." *Ellis*, 591 F.3d at 135.

"[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law." *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) (quoting *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013)). The defendant has moved to dismiss plaintiff's suit for lack of standing and failure to state a claim. I will address each in turn.

## II. Plaintiff has Standing.

Defendant contends that this Court lacks subject matter jurisdiction because the plaintiff does not have standing to assert his claims. *See* Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem. of Law"), ECF No. 13-1, at 3–5. More precisely, defendant argues that plaintiff failed to allege that he suffered a concrete injury as a result of the defendant's alleged violations of the FDCPA. *See id.* at 4. The Court disagrees.

Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. "This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009). Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "To satisfy the 'irreducible constitutional minimum' of Article III standing, a plaintiff must demonstrate (1) 'injury in fact,' (2) a 'causal connection' between that injury and the complained-of conduct, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 187–88 (2d Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). CMS focuses its argument on Ceban's alleged failure to satisfy the first requirement: injury-in-fact. *See* Def.'s Mem. of Law at 4.

5

An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). To be particularized, an injury "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1); *see Strubel*, 842 F. 3d at 188 (describing the particularity requirement as satisfied where the plaintiff shows that the defendant "injured her in a way distinct from the body politic"). To be concrete, an injury may be tangible or intangible so long as it is "'*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548–49 ("[W]e have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."); *see also Bellino v. JPMorgan Chase Bank, N.A.*, 209 F. Supp. 3d 601, 604–05 (S.D.N.Y 2016) ("Concreteness . . . refers to the realness of the injury.").

In determining whether an intangible harm is concrete for purposes of standing, "both history and the judgment of Congress play important roles." *Spokeo*, 136 S. Ct. at 1549. "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)); *see also Strubel*, 842 F.3d at 188 ("Congress's authority to create new legal interests by statute, the invasion of which can support standing, is beyond question."). Therefore, a plaintiff has standing to enforce a substantive legal right conferred by statute or, as the Supreme Court clarified in *Spokeo*, a procedural right, the violation of which presents a "risk of real harm" to the underlying right. 136 S. Ct. at 1549 (explaining that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact" and that "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified").[1] In either case, a concrete interest is at stake. Conversely, "a bare procedural violation, divorced from any concrete harm," does not satisfy Article

---

[1] In his brief, defendant argues that, under *Spokeo*, "[t]he threat of concrete harm simply cannot be concrete harm." Def.'s Mem. of Law at 4. Defendant misunderstands *Spokeo*, which explicitly recognized that the "risk of real harm can[] satisfy the requirement of concreteness." 136 S.Ct. at 1549.

6

III's injury-in-fact requirement. *Id.*; *see also Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 138 (E.D.N.Y. 2016) ("[T]he creation of a statutory interest does not vitiate Article III's standing requirements.").

Whether they label the rights under the FDCPA as substantive or procedural, courts inside and outside of this Circuit have acknowledged that a violation of the FDCPA can give rise to a concrete harm. *See, e.g.*, *Church v. Accretive Health, Inc.*, 654 Fed. App'x 990, 995 (11th Cir. 2016) (per curiam); *Taylor v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d 344, 349 (S.D.N.Y. 2017); *Fuentes v. AR Res., Inc.*, Civil Action No. 15-7988, 2017 WL 1197814, at *5 (D.N.J. Mar. 31, 2017); *Garcia v. Law Offices Howard Lee Schiff P.C.*, No. 3:16-CV-00791, 2017 WL 1230847, at *4 (D. Conn. Mar. 30, 2017); *Remington v. Fin. Recovery Servs., Inc.*, No. 3:16-CV-865, 2017 WL 1014994, at *2 (D. Conn. Mar. 15, 2017); *Bautz*, 226 F. Supp. 3d at 148; *Everett v. Fin. Recovery Servs., Inc.*, No. 16-CV-01806, 2016 WL 6948052, at *4 (S.D. Ind. Nov. 28, 2016). Moreover, with respect to Section 1692e, the Second Circuit quashed any lingering doubt on this issue in its recent summary order, holding that "there can be no dispute that Section[] 1692e . . . 'protect[s] an individual's concrete interests.'" *Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. 2017) (summary order) (quoting *Strubel*, 842 F.3d at 189); *see also Zirogiannis*, 2017 WL 4005008, at *2 ("[W]e have no trouble concluding that § 1692g of the FDCPA 'protect[s] an individual's concrete interests.'" (quoting *Strubel*, 842 F.3d at 189)).

Although *Papetti* is a summary order, and, therefore, not controlling, the Court nevertheless agrees with its reasoning and finds it applicable to the other sections of the FDCPA relevant here. *See Balke v. Alliance One Recievables Mgmt., Inc.*, No. 16-CV-5624, 2017 WL 2634653, at *3 (E.D.N.Y. June 19, 2017) (finding that, despite being a summary order, *Papetti* was "dispositive" on the question of standing). By enacting the FDCPA, Congress created a right to be free from abusive debt collection practices, "a widespread and serious national problem." *Arias*, 875 F.3d at 134 (quoting S. Rep. No. 95-382, at 2 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1696); *see also Simmons v. Roundup Funding,*

7

*LLC*, 622 F.3d 93, 96 (2d Cir. 2010) ("The FDCPA . . . was designed to protect against the abusive debt collection practices likely to disrupt a debtor's life." (alteration in original) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997))). Specifically, Section 1692d protects a debtor from harassment by debt collectors, Section 1692e secures a consumer's right to be free from "false, deceptive, or misleading" practices by debt collectors, and Section 1692f protects a consumer from debt collectors who use unfair or unconscionable means of collecting debts. A violation of any of these sections is not "a bare procedural violation" but, rather, a legally cognizable injury that reflects the realness—and gravity—of the harm against which Congress sought to protect.

Because plaintiff alleges that he personally received a letter that violated the aforementioned sections of the FDCPA and because those sections protect concrete interests, plaintiff has alleged an injury-in-fact. Accordingly, he has standing.

### III. Plaintiff Fails to State a Claim Under the FDCPA.

Having found that Ceban has standing to assert his claims, I now consider whether he has adequately alleged those claims. To state a claim under the FDCPA, plaintiff must allege that (1) he is a natural person who has been harmed; (2) the debt arises out of a transaction entered into primarily for personal, family, or household purposes; (3) defendant is a "debt collector"; and (4) defendant violated the FDCPA. *See Kaff v. Nationwide Credit, Inc.*, No. 13-CV-5413, 2015 WL 12660327, at *5 (E.D.N.Y. Mar. 31, 2015). The parties dispute only whether, as a matter of law, the letter's claim about potential tax consequences of a settlement violates Sections 1692d, 1692e, or 1692f of the FDCPA. I will consider each claim in turn.

#### A. 15 U.S.C. § 1692d

Section 1692d prohibits conduct "the natural consequence of which is to harass, oppress, or abuse" a debtor. 15 U.S.C. § 1692d. To state a claim under this section of the Act, a plaintiff must

present "non-conclusory allegations about the debt collector's allegedly harassing or abusive conduct." *Garcia*, 2017 WL 1230847, at *4.

Plaintiff has failed to do so. Beyond a perfunctory recitation of the relevant statutory language in his memorandum of law, plaintiff did not address this claim. *See* Pl.'s Opp'n at 11. And with good reason. The non-exhaustive list of examples of conduct that this section prohibits includes "the use or threat of violence," publicly advertising debts, and making abusive and repeated telephone calls. 15 U.S.C. § 1692d. Defendant's conduct—sending one allegedly misleading notice indicating that a settlement of plaintiff's debt could have tax consequences—is not comparable to any of these offenses. *See Everett*, 2016 WL 6948052, at *7 ("The Tax Consequences Language does not threaten [plaintiff] with any action and does not resemble any of the offenses listed in § 1692d. . . . Even though the offenses listed in § 1692d are not exhaustive, the Court cannot construe the statute to find a cause of action . . . here."); *see also Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 390 (E.D.N.Y. 2011) ("In the Court's view, none of the conduct alleged by the plaintiffs is similar in seriousness to any of these examples."). I therefore dismiss plaintiff's Section 1692d cause of action for failure to state a claim.

**B. 15 U.S.C. § 1692e**

Section 1692e of the FDCPA prohibits, *inter alia*, the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C § 1692e. This section sets forth a non-exhaustive list of sixteen practices that are prohibited, including "[t]he false representation of . . . the character, amount, or legal status of any debt," § 1692e(2), and "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," § 1692e(5). *See Clomon*, 988 F.2d at 1318. It also contains a catch-all provision, which broadly prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

9

From the perspective of the least sophisticated consumer, "collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 173 (2d Cir. 2015) (quoting *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012)). However, "FDCPA protection 'does not extend to every bizarre or idiosyncratic interpretation of a collection notice' and courts should apply the standard 'in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.'" *Easterling*, 692 F.3d at 233–34 (quoting *Clomon*, 988 F.2d at 1319).

The statement "this settlement may have tax consequences" does not violate Section 1692e because it is not "false, deceptive, or misleading." First, as plaintiff appears to concede, the statement is not false. *See* Pl.'s Opp'n at 14. The IRS lists "[i]ncome from discharge of indebtedness" as a type of "gross income" that "the taxpayer may be required to report . . . regardless of the amount." 26 U.S.C. § 61(a)(12); IRS Publication 4731, *Screening Sheet for Nonbusiness Credit Card Debt Cancellation* ("IRS Publication 4731"), www.irs.gov/pub/irs-pdf/p4731.pdf (last visited January 16, 2018); *see also Cozzi v. Comm'r of Internal Revenue*, 88 T.C. 435, 445 (1987) ("It is well settled that gross income includes income from the discharge of indebtedness."). Other courts evaluating identical language have found the statement to be truthful and, ultimately, not actionable. *See, e.g.*, *Taylor*, 252 F. Supp. 3d at 353; *Dunbar v. Kohn Law Firm SC*, No. 17-CV-88, 2017 WL 1906748, at *5–6 (E.D. Wis. May 8, 2017); *Remington*, 2017 WL 1014994, at *4; *Everett*, 2016 WL 6948052, at *2, *6.

Second, the reference to potential tax consequences is not deceptive or misleading. Plaintiff offers a number of unavailing arguments to suggest that it is. For example, plaintiff contends that the collection letter is misleading because it failed to provide sufficient information about the possible tax consequences, thereby rendering the statement vague. *See* Pl.'s Opp'n at 15. Moreover, plaintiff argues, even if the statement is true, "it would be presumptuous to assume that the least sophisticated consumer is well versed in the detailed minutiae of the Internal Revenue Code, IRS Tax Topic Indices

and IRS Publications…" *Id.* at 17. I agree that it would be presumptuous to assume that the least sophisticated consumer would have this knowledge. This is presumably why the tax consequences language exists—or, as one court put it, "that is the point of the statement." *Dunbar*, 2017 WL 1906748, at *6. An unsophisticated consumer likely would not know that the discharge of a debt constitutes income for the purposes of calculating her taxes. *See id.* She also might not know how the principal-interest breakdown of the debt would affect the calculus. CMS's decision to alert plaintiff to something he should consider without wading into the technicalities of an issue about which it has no expertise is perfectly in keeping with the FDCPA's goal of enabling the consumer "to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process." Pl.'s Opp'n at 13 (quoting *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1122 (9th Cir. 2014)); *see also Dunbar*, 2017 WL 1906748, at *6 (describing the inclusion of the tax consequences language in a debt collection letter as "helpful" rather than "intimidating").[2] At the very least, it does not make the letter misleading.

Plaintiff analogizes the present case to *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254 (7th Cir. 1994). According to plaintiff, the collection letter in *Gammon*, like the letter here, makes "only . . . passing references to taxing authorities and requirements." Pl.'s Opp'n at 15. But the language in *Gammon* was quite different. The debt collector in that case "explicitly linked" itself to the federal and state governments, *see Gammon*, 27 F.3d at 1255, implying that it could use the IRS and state tax authorities to collect delinquent debts, *see id.* at 1258. It also ominously warned the debtor of "the

---

[2] Plaintiff's assertion that defendant included the tax statement in the collection letter with the "sole purpose" of getting plaintiff to pay up, Pl.'s Opp'n at 16, is belied by the copious amount of litigation where debt collectors have been sued under the FDCPA for *not* stating that a settlement might have tax consequences, *see Dunbar*, 2017 WL 1906748, at *5 (collecting cases). The Second Circuit has clarified that a debt collector does not *have* to inform a debtor that a settlement might have tax consequences, because to do so "seems far afield from even the broad mandate of the FDCPA." *Altman v. J.C. Christensen & Associates*, 786 F.3d 191, 194 (2d Cir. 2015) (quoting *Schaefer v. ARM Receivable Mgmt., Inc.*, No. 09–11666–DJC, 2011 WL 2847768, at *5 (D. Mass. July 19, 2011)); *see also Remington*, 2017 WL 1014994, at *4. It has not, however, suggested that it violates the FDCPA to include this information.

11

problems [he would] face later if [he did] not pay." *Id.* at 1255. Insinuating that one has the ability to employ the weight of both state and the federal governments to collect a debt is not comparable to merely mentioning that a settlement might have tax consequences.

Plaintiff also contends that the letter is misleading because defendant did not quantify its settlement offer. *See* Pl.'s Opp'n at 16. This is particularly important, plaintiff argues, because if the settlement was for less than $600, then the creditor would not need to report the forgiven debt to the IRS and the debtor would therefore face no tax consequences. *See id.* In that scenario, plaintiff says, the statement "[t]his settlement may have tax consequences" would be "patently false" as applied to plaintiff and would inappropriately "pressure [plaintiff] into paying more of his debt to . . . avoid the risk of triggering an IRS audit, or other adverse IRS consequences." *Id.*

Plaintiff's argument falters in multiple ways. First, a collection letter is not per se misleading because it does not offer a specific dollar amount for which the debt collector will settle. *See Golubeva v. GC Servs. Ltd. P'ship*, 767 F. Supp. 2d 369, 373 (E.D.N.Y. 2010) ("The FDCPA does not require debt collectors to offer settlements, or set forth that terms must be included in an offer."). Second, even if plaintiff did not have to report his forgiven debt because an exception applied, the statement "this settlement may have tax consequences" would not be false. "The fact that the statement may not apply to certain individuals does not make it deceptive or a lie." *Smith v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 3:16-CV-1333, 2017 WL 2345600, at *3 (S.D. Ill. May 30, 2017); *see also Dunbar*, 2017 WL 1906748, at *6 ("The statement was phrased contingently and encompassed situations where tax consequences would *not* result."). Nor would it be misleading—"even the least sophisticated consumer would not interpret the statement that 'this settlement *may* have tax consequences' to mean 'this settlement *will* have tax consequences.'" *Remington*, 2017 WL 1014994, at *3; *see Eades*, 799 F.3d at 167, 173 (holding that a debt collection notice stating that a debtor "may be held personally liable" did not

12

constitute a false, deceptive, or misleading representation because "even an unsophisticated consumer could not reasonably interpret" the notice "as purporting to recite all relevant . . . considerations").

Third, and most importantly, the $600 threshold to which plaintiff refers is relevant for *creditors*, not *debtors*. As explained above, a debtor may have to report her canceled debt "regardless of amount" whereas a creditor need only report forgiven debt if the canceled debt exceeds $600 and an exception does not apply. *Compare* IRS Publication 4731, *with* 26 U.S.C. § 6050P, *and* 26 C.F.R. § 1.6050P–1. In its letter, CMS accurately refers to the possible tax consequences *to plaintiff* for settling his debt; it says nothing about its own reporting obligations, nor does it suggest that it intends to involve the IRS in any way. Contrary to plaintiff's assertion, it would be "bizarre or idiosyncratic" to interpret the language at issue to mean that defendant intended to report the settlement to the IRS and, therefore, that plaintiff should fear "triggering an IRS audit." Pl.'s Opp'n at 17 (quoting *Kaff*, 2015 WL 12660327, at *7). In doing so, plaintiff "has unreasonably found meaning in the language that is plainly absent." *Everett*, 2016 WL 6948052, at *6.

The cases that plaintiff cites do not suggest a different conclusion. Each one concerned a collection notice that explicitly referred to creditors' reporting obligations and thus, actually raised the specter of IRS involvement. *See, e.g.*, *Carlvin v. Ditech Fin. LLC*, 237 F. Supp. 3d 753, 755 (N.D. Ill. 2017) ("Ditech is required to report any debt forgiveness to the Internal Revenue Service."); *Balon v. Enhanced Recovery Co.*, 190 F. Supp. 3d 385, 387 (M.D. Pa. 2016) ("[A]ny indebtedness of $600.00 or more, which is discharged as a result of a settlement, may be reported to the IRS."); *Velez v. Enhanced Recovery Co.*, Civil Action No. 16-164, 2016 WL 1730721, at *1 (E.D. Pa. May 2, 2016) (same); *Good v. Nationwide Credit, Inc.*, 55 F. Supp. 3d 742, 744 (E.D. Pa. 2014) ("[The creditor] is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more."). Some courts that have analyzed these types of statements have found them plausibly intimidating because the consumer may feel pressured to pay the whole debt rather than accept a settlement that the creditor

might report to the IRS. *See Dunbar*, 2017 WL 1906748, at *2–4 (collecting cases); *see also Smith*, 2017 WL 2345600, at *3 (same). *But see Rhone v. AllianceOne Receivables Mgmt., Inc.*, No. 1:14-CV-02034, 2015 WL 4758786, at *5 (S.D. Ind. Aug. 12, 2015) (finding no violation of the FDCPA even when the collection letter included a statement about the creditor's reporting obligations). In these cases, some courts have found the use of the word "may" problematic because an unsophisticated debtor could still be deceived into thinking the creditor might report the settlement; that is, the threat of alerting the IRS was still present. *See, e.g.*, *Balon*, 190 F. Supp. 3d at 391–92.

Unlike the debt collectors in the cases that plaintiff cites, CMS did not "needlessly suggest[] that it would report settlement of debt information to the IRS" or "overstate[] its own tax reporting requirements." *Remington*, 2017 WL 1014994, at *4. Rather, as all of the district courts that have analyzed the precise language here have concluded, the statement simply—and correctly—put plaintiff on notice that a settlement "may" have tax consequences. *See, e.g.*, *Taylor*, 252 F. Supp. 3d at 353; *Dunbar*, 2017 WL 1906748, at *6; *Remington*, 2017 WL 1014994, at *4; *see also Everett*, 2016 WL 6948052, at *6. Therefore, I find that the statement "[t]his settlement may have tax consequences" is not false, deceptive, or misleading and that plaintiff fails to state a claim under Section 1692e.

In addition to his primary argument that the letter is generally misleading, plaintiff also alleges that the letter violated specific subsections of 1692e, namely 1692e(2), 1692e(5), 1692e(7), 1692e(8), and 1692e(10). *See* Compl. ¶ 19. With respect to subsections 1692e(2), 1692e(7), and 1692e(8), plaintiff makes no arguments, so these claims fail as a matter of law. Plaintiff's complaint also does not specifically address subsection 1692e(5), which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). In so far as plaintiff's complaint and brief argue that, by virtue of including the allegedly misleading statement about tax consequences, the letter constituted a threat in violation of subsection 1692e(5), the claim would not succeed. A false threat exists where the least sophisticated consumer "would interpret the [debt

14

collector's] language to mean that legal action was authorized, likely, and imminent." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993); *see also Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25 (2d Cir. 1989) (finding a violation of subsection 1692e(5) when a collection letter wrongly gave the impression that "legal action [had] already been or [was] about to be initiated and [could] be averted from running its course only by payment"). CMS's letter does not indicate that CMS intends to do anything, much less initiate legal action. Even for the least sophisticated consumer, it would be a far stretch to equate possible tax consequences with "legal action [that] was authorized, likely and imminent." *Bentley*, 6 F.3d at 62. Finally, plaintiff's allegation that the letter violates subsection 1692e(10) fails for the same reasons it fails under the general prohibition of misleading representations. *See Garcia*, 2017 WL 1230847, at *8.

### C. 15 U.S.C. § 1692(f)

The FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. As with the other sections of the FDCPA, this provision provides a non-exhaustive list of violative conduct, including collecting "any amount . . . [not] expressly authorized by the agreement creating the debt or permitted by law," "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property," and "[c]ommunicating with a consumer regarding a debt by post card." § 1692f(1), (6) & (7).

Courts have described Section 1692f's language as being "as vague as they come." *Cruz v. Credit Control Servs., Inc.*, No. 2:17-CV-1994, 2017 WL 5195225, at *8 (E.D.N.Y. Nov. 8, 2017) (quoting *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 531 (S.D.N.Y. 2013)). Nevertheless, plaintiff does not allege any conduct that one could conceivably construe as "unfair" or "unconscionable." *See Arias*, 875 F.3d at 135 ("Although the FDCPA leaves the term 'unfair or unconscionable means' undefined, we have held that the term refers to practices that are 'shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness.'" (quoting *Gallego v. Northland Grp. Inc.*, 814

15

F.3d 123, 128 (2d Cir. 2016))); *see also Sussman v. I.C. Sys., Inc.*, 928 F. Supp. 2d 784, 787-88, 797 (S.D.N.Y. 2013) (finding that the defendant's act of placing over fifty calls to the plaintiff's home to collect a debt that the plaintiff did not owe "[did] not rise to the level of 'unfair or unconscionable' acts"). Indeed, plaintiff does no more than to recite the conduct that he alleged violated Section 1692e and replace the word "misleading" with the phrase "unfair and unconscionable" without providing any case law to support his assertions. *See* Pl.'s Opp'n at 20–21. Because "courts have dismissed Section 1692f claims that do 'not identify any misconduct beyond that which [p]laintiffs assert violate other provisions of the FDCPA,'" *see Garcia*, 2017 WL 1230847, at *5 (quoting *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006)), and because finding a cause of action here would render the words "unfair" and "unconscionable" meaningless, I dismiss plaintiff's Section 1692f claim.

## CONCLUSION

For the foregoing reasons, defendant's motion is granted as to all claims. The Clerk of Court is directed to enter judgment in favor of the defendant and close the case.

SO ORDERED.

                                                                                                 /s/
                                                                          Allyne R. Ross
                                                                          United States District Judge

Dated:        January 17, 2018
                Brooklyn, New York